UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| M. ROBERTA FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18-cv-01123-GCS |
| | ) | |
| BELLEVILLE AREA COMMUNITY COLLEGE DISTRICT NO. 522, BOARD OF TRUSTEES OF BELLEVILLE AREA COMMUNITY COLLEGE DISTRICT NO. 522, and SOUTHWESTERN ILLINOIS COLLEGE, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff M. Roberta Fuller brings claims under Title I of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination in Employment Act ("ADEA"), and the Illinois Human Rights Act ("IHRA"). Fuller alleges that Defendants Belleville Area Community College District No. 522, Belleville Area Community College District No. 522 Board of Trustees, and Southwestern Illinois College ("SWIC") discriminated against her on the basis of her age and her disability and that they failed to accommodate reasonably her disability. Before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons delineated below, the Court **DENIES** Defendants' motion to dismiss.

## FACTUAL ALLEGATIONS

On May 16, 2018, Fuller filed a complaint under the ADA, the Rehabilitation Act, the ADEA, and the IHRA claiming Defendants discriminated against her and failed to accommodate her disability. At the time Fuller filed her complaint, she was 78 years old and has at all relevant times suffered from cataracts. (Doc. 1, ¶ 1, 15). For the past 18 years she had worked as a switchboard operator for SWIC at their Granite City, Illinois location. (Doc. 1, ¶ 15). Her duties included taking incoming calls, making outgoing calls, and posting phone billings in Microsoft Excel. (Doc. 1, ¶ 24). Fuller states that she has never had any performance issues and has generally been praised for her work. (Doc. 1, ¶ 16). Because Fuller lived one block from SWIC's Granite City location, she could either drive around the block or walk to work. (Doc. 1, ¶ 17).

On June 29, 2017, SWIC's Chief Information Officer informed Fuller that SWIC was moving her work location twenty-eight miles away to SWIC's Belleville, Illinois campus. (Doc. 1, ¶ 18). Because her cataracts prevented her from driving during certain conditions, Fuller requested that she be allowed to continue working from SWIC's Granite City location. (Doc. 1, ¶ 20). SWIC refused Fuller's request. (Doc. 1, ¶ 20).

Fuller received a letter from her optometrist on July 14, 2017. (Doc. 1, ¶ 21). The letter stated that Fuller should not drive when headlights or streetlights cause extra glare, such as when it is dark or raining. (Doc. 1, ¶ 21). Fuller delivered the letter to SWIC later that day. (Doc. 1, ¶ 21). Fuller alleges that driving long distances, even during the daytime, is not advisable because her cataracts restrict her peripheral vision. (Doc. 1, ¶ 22).

Fuller gave SWIC the doctor's note on July 16, 2017, and again requested that SWIC allow her to work at SWIC's Granite City location. (Doc. 1, ¶ 23). SWIC refused. (Doc. 1, ¶ 23). Later, SWIC advised Fuller to take public transportation. (Doc. 1, ¶ 27). Fuller claims that public transit from SWIC's location in Granite City to its location in Belleville involves three transfers and would take about two hours each direction. (Doc. 1, ¶ 27). Although Madison County provides ADA transportation, Fuller alleges that the transportation from Granite City to SWIC's Belleville location has two connections, each of which require a two-hour window. (Doc. 1, ¶ 27). Thus, according to Fuller, using ADA transportation could take her up to eight hours to commute to and from work. (Doc. 1, ¶ 27).

Fuller has a daughter who works at SWIC's Granite City campus. (Doc. 1, ¶ 30). Fuller's daughter assisted her with her accommodation requests. (Doc. 1, ¶ 29). Since making the accommodation requests, Fuller claims that both she and her daughter have been subject to informal disciplinary meetings with their supervisors for trivial and pretextual matters for which no other employees receive discipline. (Doc. 1, ¶ 29). For a brief time, Fuller's daughter adjusted her work schedule and took breaks in the middle of the day to transport Fuller to and from work. (Doc. 1, ¶ 30). Fuller alleges that her daughter was threatened with discipline for transporting her. (Doc. 1, ¶ 31).

Fuller claims that there is no business reason for SWIC to move her work location to Belleville because all the minimum requirements of her job could be performed at SWIC's Granite City location. (Doc. 1, ¶ 25). According to Fuller, allowing her to transfer back to Granite City would not create an undue hardship on Defendants. (Doc. 1, ¶ 26).

Fuller asserts that Defendants' actions are a transparent attempt to force her to retire. (Doc. 1, ¶ 35). She alleges that the disciplinary meetings and threats of discipline by Defendants are part of a retaliation campaign against her and her daughter. (Doc. 1, ¶ 37). Furthermore, Fuller claims that Defendants have refused to provide her with a reasonable accommodation and have not engaged in the interactive process as required by the ADA, the Rehabilitation Act, and the IHRA. (Doc. 1, ¶ 36).

Fuller brings eight counts against Defendants. In Counts I, II and VII, Fuller claims that Defendants failed to offer her reasonable accommodations and declined to engage in the interactive process with her in violation of the ADA, the Rehabilitation Act of 1973, and the IHRA. In Counts III, IV, and VIII, Fuller argues that Defendants discriminated against her because of her disability, because she was regarded as disabled, or because of her record of disability in violation of the ADA, the Rehabilitation Act, and the IHRA. In Counts V and VI, Fuller alleges Defendants discriminated against her because of her age in violation of the ADEA and the IHRA. On June 25, 2018, Defendants filed a motion to dismiss arguing that Counts VI, VII, and VIII must be dismissed due to Fuller's alleged failure to exhaust administrative remedies prior to filing suit. They also argue that, as to all counts, Fuller fails to state a claim upon which relief can be granted.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction over a complaint. The Court treats the motion to dismiss based on the affirmative defense of failure to exhaust administrative remedies, however, as a Rule 12(b)(6) motion because exhaustion-based defenses do not implicate

the Court's jurisdiction over the subject-matter of an action. *See Gibson v. West,* 201 F.3d 990, 994 (7th Cir.2000)(stating that failure to exhaust administrative remedies is not a jurisdictional requirement, although it is a reason for dismissal). *See also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)(finding that the rule than an EEOC charge limits the scope of a subsequent complaint is analogous to timely filing requirements and is not jurisdictional because it, like exhaustion requirements, is subject to waiver, estoppel, and equitable tolling).

When considering a motion to dismiss under 12(b)(6), this Court determines if a complaint includes enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555; quoting FED R. CIV. PROC. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

ANALYSIS

I. **Exhaustion of State Administrative Remedies**

Defendants first argue for dismissal of Counts VI, VII, and VIII of Fuller's complaint, all brought pursuant to the IHRA, because she did not receive a right-to-sue letter from the Illinois Department of Human Rights ("IDHR") prior to filing suit. While Fuller received right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Civil Rights Division of the United States Department of Justice prior to filing suit, Defendants argue that Fuller's failure to obtain a right-to-sue letter from the IDHR means that she has not exhausted her administrative remedies.

Failure to exhaust administrative remedies is an affirmative defense. *See Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). A plaintiff must exhaust administrative remedies before bringing suit under the IHRA. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458-459 (7th Cir. 1994). The IHRA states that discrimination charges must be filed with the IDHR or with the EEOC. *See* 775 ILCS § 5/7A-102(A)-(A-1) (2020). If the charge is filed with the EEOC, as Fuller's was, it is deemed to have been filed with the IDHR. *See* 775 ILCS § 5/7A-102(A-1). The EEOC conducts its investigation first. If the EEOC completes its investigation and determines there is no reasonable cause to believe discrimination occurred or is occurring, it sends a letter of determination to the complainant giving that person a right to sue within 90 days after receipt of the letter. *See* 29 C.F.R. § 1601.19.

If the system works correctly, when the IDHR is timely notified of the EEOC's determination, it will adopt the EEOC's findings within 10 days unless the complainant

requests within 35 days that the IDHR review the EEOC's findings. *See* 775 ILCS § 5/7A-102(A-1)(3). If the IDHR does not receive a request to review the EEOC's findings within 35 days, it must notify the complainant that it has adopted the EEOC's findings and that the complainant may sue within 90 days. *See* 775 ILCS § 5/7A-102(A-1)(3)(a).

Fuller argues that judicial economy favors finding that once she received the right-to-sue letter from the EEOC she exhausted her administrative remedies fully. She asserts that because the IDHR will simply adopt the EEOC's findings unless a complainant requests them to conduct their own investigation, there is no further administrative remedy to pursue. Defendants maintain Fuller needed to wait for a right-to-sue letter from IDHR before bringing her state claims in federal court.

This Court agrees that receipt of the EEOC right-to-sue letter exhausted Fuller's remedies as to all claims within the scope of her EEOC charge. As a preliminary matter, the EEOC right-to-sue letters inform complainants that they may file their lawsuits in state or federal court. The letters do not specify that only federal claims may be filed in federal court following receipt of a letter from the EEOC.

The Seventh Circuit recognizes that the purpose of a right-to-sue letter is "to provide a formal notification to the claimant that his administrative remedies . . . have been exhausted." *Beverly v. Lone Star Lead Constr. Corp*, 437 F.2d 1136, 1140 (5th Cir. 1971). A right-to-sue letter also informs a complainant that she must file suit within a certain number of days. *Id.* In the Title VII context, the Supreme Court has held that timely filing a charge with the EEOC "is not a jurisdictional prerequisite to suit in federal court . . . ." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Extending *Zipes's* holding, several Federal Circuit courts have concluded that, in the Title VII context, "receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569-70 (11th Cir. 1996). *See also, e.g., Jones v. Am. State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988); *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1216 (5th Cir. 1982); *Al-Shams v. Jacobs*, No. 93-5188, 1993 WL 431117, at *1 (D.C. Cir. Oct. 14, 1993). One of these equitable modifications is allowing a plaintiff to proceed with a Title VII lawsuit once that plaintiff is entitled to receive a right-to-sue letter, regardless of if that plaintiff actually obtained one. *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008)(adopting this approach); *Moore v. City of Charlotte*, 754 F.2d 1100, 1104 n.1 (4th Cir. 1985)(same). *See also Burke v. Cornerstone*, No. 07-889, 2007 WL 3046193, at *1-2 (D. Conn. Oct. 12, 2007) (finding that receiving a right-to-sue letter from a state administrative agency, but not from a federal administrative agency, was sufficient to deny motion to dismiss).

This Court finds it appropriate to apply the same rationale to this case, especially considering that "[t]he Illinois Human Rights Act is similar to Title VII of the Civil Rights Act of 1964." *Valley Mould & Iron Co. v. Illinois Human Rights Comm'n*, 478 N.E.2d 449, 453 (Ill. App. Ct. 1985) (internal citations omitted). *See also Robinson v. Vill. Of Oak Park*, 990 N.E.2d 251, 257 (Ill. App. Ct. 2013)(noting that "the Illinois Human Rights Act and the federal Title VII law are similar in intent . . . .") (internal citations omitted). As noted above, the IDHR automatically will adopt the EEOC's findings within ten days after being timely notified of the EEOC's determination. Thirty-five days after receiving the

EEOC's determination, the IDHR must send a right-to-sue letter to the complainant. By now, the IHRA required the IDHR to adopt the EEOC's findings and to send a right-to-sue letter to Fuller (and it is reasonable to infer that she has or should have received one at this point). As a result, even if the Court dismissed her claims for failure to exhaust, she likely could seek leave to amend her complaint and add the claims anew based on the procedural posture and late stage of this action.

Concerns of judicial economy also weigh in favor of denying Defendants' motion to dismiss. A contrary finding would force plaintiffs proceeding on both Federal and State claims to avoid missing the federal filing deadline by filing their complaints in piecemeal fashion. A plaintiff would be forced to either file two lawsuits (one state and one federal) and later combine them in federal court, to file in federal court and stay proceedings until the IDHR issues its letter adopting the EEOC's position, or to file in federal court only to have the state law claims dismissed to attempt to amend the complaint after the IDHR issues its letter. These options are nonsensical given the notice-related purpose of a right-to-sue letter and the fact that the EEOC and IDHR essentially conduct a single investigation with a single outcome. This Court believes it would squander judicial resources to dismiss Fuller's IHRA claims now only to have her seek leave to amend her complaint, which the Court would grant, and only then to allow her IHRA claims to proceed after presenting this Court with the IDHR's right-to-sue-letter.

## II. Disparate Treatment Claims

Fuller's claims for disability and age discrimination under Counts III, IV, V, and VI can be summarized as follows: Fuller alleges that Defendants are trying to force her to

resign from her job because of either her age or her disability by imposing difficult working conditions on her that exploit her disability. Fuller argues that she has performed her job well for years, that Defendants transferred her without any business purpose, and that Defendants are aware that it is nearly impossible for her to commute to work. In response, Defendants claim Fuller cannot establish a *prima facie* case for disparate treatment because transferring an employee to a different work location is not an adverse employment action. This Court finds that, accepting her allegations as true, Fuller sufficiently pleads an adverse employment action.

Employers are prohibited from engaging in employment discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case for disparate treatment under the ADA and the Rehabilitation Act, a plaintiff must demonstrate (1) she was disabled; (2) she was qualified to perform essential functions with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *See E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008). *See also Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)(stating that the differences between the ADA and the Rehabilitation Act for disparate treatment claims are "immaterial nuances").

Additionally, employers are prohibited from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age." *Carson v. Lake Cty., Indiana*, 865

F.3d 526, 532-533 (7th Cir. 2017). Alternatively, a plaintiff may establish a *prima facie* case by demonstrating that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Id.* at 533 (quoting *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016)).

Finally, Illinois courts evaluate discrimination claims under the IHRA by using the same test for claims under Title VII of the Civil Rights Act of 1964 and the ADEA. *See Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989). A plaintiff establishes a *prima facie* case of employment discrimination under the IHRA when she shows (1) she is a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside employee's class more favorably. *See Owens v. Dep't of Human Rights*, 936 N.E.2d 623, 640 (Ill. App. Ct. 2010).

Defendants attack Fuller's claims on the basis that transferring a work location, even when it results in a longer commute, is not an adverse employment action. In support, Defendants cite several Seventh Circuit cases where the Court held that "an increased distance to travel to work" does not by itself qualify as an adverse employment action. *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir. 2000)(citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Fuller responds by analogizing her case to *Christensen v. Equitable Life Assurance Society of the United States*, where the Seventh Circuit found that a choice between transferring from Indianapolis to Chicago or being

terminated constituted constructive discharge. *See Christensen v. Equitable Life Assur. Soc. of U.S.*, 767 F.2d 340, 343 (7th Cir. 1985).

The Seventh Circuit defines adverse employment actions broadly. *See Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001); *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000). "It is not limited solely to loss or reduction of pay or monetary benefits, but can encompass other forms of adversity." *Stutler*, 263 F.3d at 703 (citing *Bell*, 232 F.3d at 555). However, not everything that makes an employee unhappy is actionable. *See Nagle v. Vill. Of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009).

Based on the allegations in Fuller's complaint, the Court believes she sufficiently pleads that she suffered an adverse employment action. When holding that an increased commute does not qualify as an adverse employment action, the Seventh Circuit has characterized the increased commute as "merely an inconvenience." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Here, Fuller alleges that, rather than a longer commute, Defendants make Fuller's commute nearly impossible. According to Fuller, at the least, each day of work would constitute four hours of travel time. Such an increase in travel time, if true, cannot be characterized as a mere inconvenience, instead demonstrating a plausibly-pleaded adverse employment action she suffered as a result of her allegedly unnecessary duty station transfer. Therefore, Fuller's age and disability discrimination claims satisfy the notice-pleading requirements of Rule 8.

### III. Failure to Provide Reasonable Accommodations Claims

In Counts I, II, and VII, Fuller claims that Defendants failed to reasonably accommodate her disability when they refused to transfer her back to her Granite City

work location and disengaged from the interactive accommodation process. Defendants attack her claims on two grounds. First, Defendants argue that, in the Seventh Circuit, employers are not required to accommodate an employee's commute to work. Second, Defendants argue that employers are not required to provide accommodations when an employee is already performing the essential functions of her job without an accommodation. This Court finds that Fuller has pleaded a *prima facie* case of failure to provide reasonable accommodations.

The ADA states that an employer's failure to make reasonable accommodations for a known disability constitutes unlawful discrimination. *See* 42 U.S.C. §§ 12112(a), b(5)(A). To establish a *prima facie* case for failure to accommodate, a plaintiff must show "(1) the plaintiff is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015).

Defendants attempt to add a fourth element to Fuller's failure to accommodate claims. Relying on *Foster v. Arthur Anderson, LLP*, Defendants assert that Fuller must also prove that the disability caused an adverse employment action. 168 F.3d 1029, 1032-33 (7th Cir. 1999). However, in *E.E.O.C. v. AutoZone* the Seventh Circuit admonished that, "no adverse employment action is required to prove a failure to accommodate." *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010). A recent Seventh Circuit case omitted *Foster's* fourth prong when stating the failure to accommodate elements, and the Court did not analyze whether the plaintiff suffered an adverse employment action. *See Scheidler*, 914 F.3d at 541. *See also Guzman v. Brown City.*, 884 F.3d 633, 642 (7th Cir 2018)

(listing only three required elements for reasonable accommodation cases). Additionally, the Northern District of Illinois persuasively determined that *Foster's* fourth element is limited to *Foster*-like cases where an adverse employment action, such as termination, allegedly resulted from an employer's failure to accommodate. *See Nawrot v. CPC Int'l*, 259 F. Supp. 2d 716, 722-723 (N.D. Ill. 2003). Thus, this Court will apply the standard three-prong test to Fuller's failure to accommodate claims.

Defendants assert that accommodations related to an employee's commute are not reasonable under the ADA because a commute is an activity outside the scope of employment. The Court does not read the current law so stringently. The Seventh Circuit first addressed the relationship between reasonable accommodations and commutes in *Filar v. Chicago School Reform Board*. In *Filar*, the plaintiff, a cadre substitute teacher,[1] could not drive to work and suffered from osteoarthritis that made it hard to walk. *See Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1059 (7th Cir. 2008). She requested that the Chicago Board of Education accommodate her disability by assigning her to one work location within a minimum walking distance from public transportation, which the board refused. *Id.* Rather than closing the door on all claims related to commutes, the court in *Filar* stated that three aspects of the plaintiff's accommodation request made it unreasonable. *Id.* at 1067.

First, the Court stated that the plaintiff's request for one work location amounted to impermissible preferential treatment because all other cadre substitutes had to be

---

[1] "[C]adre substitute teachers move from school to school to cover temporary vacancies on a daily basis … ." *Filar*, 526 F.3d at 1067 (internal quotation marks omitted).

available to work at all the schools in the area. *Id.* Second, the Court found that, under a collective bargaining agreement, the Board had no authority to assign the plaintiff to only one place of work. *Id.* at 1068. Finally, the Court noted that even if the Board had authority to grant the plaintiff's request, "the administrative burden . . . would have been prohibitively weighty." *Id.*

None of the concerns in *Filar* are present in this action. Defendants do not allege that Fuller's request amounts to preferential treatment, there is no contention that Defendants lack authority to grant Fuller's request, and Defendants do not claim that Fuller's request is prohibitively burdensome. Importantly, Fuller was not requesting that Defendants help her commute, but rather that they transfer her to what she alleges was a vacant position. "The ADA includes 'reassignment to a vacant position' as a possible 'reasonable accommodation' for disabled employees." *E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012)(quoting 42 U.S.C. § 12111(9)(B)).

This conclusion is supported by the Seventh Circuit's recent foray into the relationship between commuting and reasonable accommodations. In *Yochim v. Carson*, the Seventh Circuit examined whether the defendant reasonably accommodated the plaintiff's injury to her hand that prevented her from grasping handrails while riding trains. *See Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019). Rather than simply stating that accommodations for commuting issues are never required, the Court examined whether the defendants reasonably accommodated the plaintiff when they shifted her work schedule so she could avoid having to stand while riding a train during rush hour.

*Id.* at 591-593. Thus, the law in the Seventh Circuit permits an inquiry into whether a requested accommodation in response to commuting issues is reasonable.

Defendants similarly ague that Fuller's failure to reasonably accommodate claim under the IHRA should be dismissed because Illinois courts hold that employers do not have to reasonably accommodate commuting issues. Defendants cite *Owen v. Department of Human Rights* in support. *See Owen v. Dep't of Human Rights*, 826 N.E.2d 539, 547 (Ill. App. Ct. 2005). However, the court in *Owen* found it significant that the employer had no vacant positions available in the plaintiff's job title. *Id.* at 545 (stating that "the evidence is undisputed that there were no positions available in petitioner's job title"). The lack of a vacant position was critical to the court's concern that forcing employers to reasonably accommodate an employee's commute would place "an undue burden upon employers . . . ." *Id.* at 547. Because Fuller alleges a vacant position exists, or existed, to which Defendants could transfer her, the concerns underlying the *Owen* court's decision are not present here.

Defendants finally argue that Fuller requires no reasonable accommodation because she continues to work at the Belleville office without a reasonable accommodation. Defendants correctly point out that:

> an employer need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of her job—not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place.

*Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). However, Fuller alleges that she has found a temporary solution to getting to her new work location. It may

reasonably be inferred that this solution is no longer available or is not sustainable. If Fuller cannot get to her work location, she cannot perform her job's essential functions. She plausibly states a claim for failure to offer reasonable accommodations. Thus, the Court concludes that Fuller's reasonable accommodation claims survive Defendants' motion to dismiss.

## Conclusion

For the above-stated reasons, the undersigned **DENIES** Defendants' motion to dismiss (Doc. 13).

**IT IS SO ORDERED.**

Dated: March 18, 2020.

Digitally signed by Judge Sison
Date: 2020.03.18 10:50:06 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge